MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant, *v.* GEORGE J. GILLESPIE, Respondent and Third-Party Plaintiff. CATHOLIC SUMMER SCHOOL OF AMERICA, Third-Party Defendant.

First Department, October 14, 1952.

*Vincent Keane* of counsel (*Haughton Bell,* attorney), for appellant.

*John A. Hoyt, Jr., George J. Gillespie, Jr.,* of counsel (*Ernest A. Zema,* attorney), for respondent.

BREITEL, J. Upon a motion to strike an affirmative defense for legal insufficiency, denied at Special Term, there is involved the question whether section 1083-b of the Civil Practice Act is applicable to an action commenced before the statutory emergency period expired, but pending after the expiration.

Suit is upon a collateral bond given in a mortgage transaction. The alleged unpaid balance of the debt is $72,500. Summons was served on May 28, 1947. The complaint was served on July 7, 1947. Section 1083-b ceased to be applicable to other than one-, two- and three-family dwellings after July 1, 1947 (L. 1947, ch. 473). The premises herein do not come within the excepted classification. The answer served interposed, among others, the defense of section 1083-b, namely, that the fair and reasonable market value of the mortgaged property exceeded the debt, and therefore, plaintiff will not be entitled to judgment on the bond.

Section 1083-b is, by its terms, made applicable to '' any action pending at the time this section   *   *   *   takes effect, or hereafter commenced during the emergency ''.

Section 1083-b was one of a series of emergency statutes adopted in 1933 to meet distressed conditions in the mortgage field as a result of the great depression. The statutes had been extended on an annual basis by the Legislature. The annual extensions were accomplished not by amendments of the substantive sections of the law, but by chapters of sessions laws. In 1947, chapter 473 was enacted. It did not extend the emergency period of section 1083-b beyond July 1, 1947, except as to one-, two- and three-family dwellings. It restated the period of the emergency, other than as to the exception, to be '' until July first, nineteen hundred forty-seven.''

The emergency statutes of which section 1083-b was a part have been variously referred to as the mortgage moratorium statutes. Their marked effect in limiting the enforcement of property rights and obligations of contract was justified by the economic crisis of the nineteen-thirties. (*Klinke* v. *Samuels,* 264 N. Y. 144; *Honeyman* v. *Hanan,* 275 N. Y. 382, appeal dismissed 302 U. S. 375; *Honeyman* v. *Jacobs,* 306 U. S. 539.)

The 1947 Legislature, with that history in mind (see L. 1933, ch. 794, § 1, as amd. by L. 1947, ch. 473, § 1), terminated the

statute's applicability and the declaration of emergency which justified it, as of the following July 1st, with respect to all but the smaller properties excepted. It is reasonable, therefore, to suppose that it did not contemplate that a defense under the section should be available beyond the emergency period. Whether the Legislature effected a partial repealer of section 1083-b, or not, is a fine distinction which it is not necessary to determine. The statute being justified only by the emergency, the intention is clear. A superficial ambiguity arises, because the period of applicability of section 1083-b has, since its first enactment, been accomplished by separate extension laws outside the consolidated laws. (This is not an infrequent practice with temporary emergency statutes, because of the desire to avoid annual amendment to substantive sections of law.) Moreover, there was an added reason for not amending or repealing section 1083-b. That reason was that it was to continue in full effect as to one-, two- and three-family dwellings until July 1, 1948. It is notable that even the exception as to one-, two- and three-family houses was not continued beyond July 1, 1949.

Any other construction would spell out a meaningless and nonintended extension of the mortgage moratorium beyond July 1, 1947.

A more serious consideration exposes the insufficiency of the affirmative defense. The emergency statute here is justified constitutionally only by the severity of the economic crisis of the great depression, and only because of the legislative finding of emergency. (See authorities cited above.) That crisis was long over by 1947. By chapter 473 the emergency was declared at an end as of the following July 1st. And even as to the smaller properties the emergency was declared at an end by July 1, 1949. Accordingly, the declared emergency being over, even if the Legislature had wished to make the defense here interposed available after July 1, 1947, it could not have. There was no longer any constitutional support for it after that date, whatever the situation was when the action was commenced.

No vested or substantial right in property is involved here. Rather, we are concerned with a remedial measure affecting remedies available to mortgagees in the enforcement of obligations in the courts. Only thus considered could these measures be sustained as constitutional. (*Klinke* v. *Samuels,* 264 N. Y. 144, *supra*; *Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398, 439.) Hence the defense was available until July 1, 1947.

Thereafter, the defense would have no point of reference in the scheme of the emergency legislation. Nor would it have any constitutional basis. It ceased to be available after July 1, 1947, because the impediment to a mortgagee's remedies in the courts had been lifted.

Accordingly, the order of Special Term should be reversed, with $20 costs and disbursements to the appellant, the motion granted and the first separate defense stricken from the answer.

PECK, P. J., COHN and VAN VOORHIS, JJ., concur; DORE, J., dissents and votes to affirm for the reasons stated by the learned Justice at Special Term.

Order reversed, with $20 costs and disbursements to appellant, the motion granted and the first separate defense stricken. Settle order on notice.