W. K. STOWERS, M. D. and Mrs. Jennie
B. Stowers, Plaintiffs,

v.

UNITED STATES of America
Defendant.

No. 2615.

United States District Court
S. D. Mississippi,
Jackson Division.

July 2, 1958.

Gerard H. Brandon of Brandon, Brandon, Hornsby & Handy, Natchez, Miss., R. Brent Forman, of Laub, Adams, Forman & Truly, Natchez, Miss., for plaintiffs.

Charles K. Rice, Asst. Atty. Gen., John P. Baker, James P. Garland, Stanley Brons, Dept. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., Edwin R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., for defendant.

REEVES, District Judge.

Plaintiffs, claiming the right to a deduction on their income tax for the year 1951 in the sum of $7,710 for casualty loss, were cast by the Department of Internal Revenue. The taxes were paid without such deduction and then suit was filed to recover the amount of the claimed overpayment. Deduction for losses apposite in this case may be found in § 165 Title 26 U.S.C.A. By paragraph (3) of subparagraph (c) of said section "losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or *other casualty* * * *" (emphasis mine) may be deducted as a loss during any taxable year.

The plaintiffs assert that they suffered from a casualty which resulted in serious damages to their residence in Natchez, Mississippi. The plaintiffs had acquired this residence on Clifton Avenue in a choice residential section called Clifton Heights many years ago. They had made substantial and costly improvements on the property. The residence was located on what has been designated as the "bluffs" in the northern part of Natchez overlooking the Mississippi River and the fertile lowlands of Louisiana. The "bluffs" are approximately 200 feet high above the river and are composed of what is known by geologists as "loess soil."

Such soil was wind deposited many centuries ago and rests upon a lower strata of sand, and sand and clay. It is of such nature that it stands firm and strong unless water saturates below the surface and then it semi-liquifies and slides or sloughs result. In its natural state it sheds surface water. It can only be damaged by the entrance of surface water into cracks or other apertures through the surface. Extensive and heavy buildings have been erected on the surface of this earth structure over a period of centuries. It formed a substantial and firm base or foundation for such structures.

The home of the plaintiffs was in a choice and preferred area. Clifton Avenue, a paved street constructed and maintained by the city, parallels the river on the apex of the bluffs, immediately in front of the residence of plaintiffs. To protect the soil from erosion and from sliding or sloughing, shrubbery, including a large tree, had been transplanted and had grown near the edge and along the slopes. Moreover, a parapet or fence had been erected to protect against the use of the edge of the bluff in such way as to prevent erosion. Experts, as well as some others, were familiar with the tendency of such soil to slough and slide when it became saturated with water.

In the construction and maintenance of Clifton Avenue, there was not adequate escape provided for surface water and it was permitted to seep into the soil in such quantities as to saturate the subsoil along the highway and to liquify it in such place and in nearby areas. Because of this, on October 26, 1951, a section of large magnitude sloughed off, including much of Clifton Avenue near the residence of the plaintiffs. This sloughing or sliding included the shrubbery and a large tree that stood, supposedly as a protection, against sloughing of the land. The result of this catastrophe caused a barricading of Clifton Avenue as it was no longer useful as a means of ingress and egress to and from the residence of plaintiffs. The street was rendered impassible and perilous for traffic. It was closed at points on either side of the residence of plaintiffs. The only means of access was through an unimproved alley way at the rear of the residence of plaintiffs.

It is admitted by the defendant that the damage to the residence of plaintiffs aggregated the amount claimed, namely, $7,710, but it is argued by defendant that the damage to plaintiffs' property was not a physical one and likened it to a simple deterioration. Moreover, liability was denied because the physical property, that is to say, the residence, was not harmed or affected by the catastrophe.

After disallowing the deduction, the plaintiffs paid the claimed deficiency with interest and now sue for the total amount paid in the sum of $4,037.08 and for interest at 6% from the date of said payment, March 2, 1956. If the plaintiffs are entitled to recover they should have judgment as prayed.

The right of plaintiffs to recover, if they have such right, would be based upon the words "other casualty" as used in the statute.

1. In Rosenberg v. Commissioner of Internal Revenue, 198 F.2d 46, loc. cit. 47, 41 A.L.R.2d 684, the late Judge Collet of the Eighth Circuit, quoted approvingly from United States v. Rogers, 9 Cir., 120 F.2d 244, loc. cit. 246, as follows:

" * * * the word 'casualty' connoted the sense of suddenness, and that as used in Sec. 23, Webster's definition applied:

" ' "1. Chance; accident; contingency; also, that which comes without design or without being foreseen; an accident * * *

" ' "2. An unfortunate occurrence; a mischance; a mishap; a serious or fatal accident; a disaster * * *." ' "

There was a further quotation from the Roger's case, supra, as follows:

" 'It can be seen that "casualty" may properly be used in the sense of "accident". The latter word is defined by the same source as "An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event". Showing that casualty may have the sense of suddenness is the definition in 1 Bouv. Law Dict., Rawle's 3d Rev., p. 430, as follows: "Inevitable accident. Unforeseen circumstances not to be guarded against by human agency, and in which man takes no part". Such definition is in accord with that given in Matheson v. Commissioner of Internal Revenue, 2 Cir., 54 F.2d 537, 539.' "

In this case, the "bluffs" composed of loess surface soil at Natchez, Mississippi, had been used advantageously and confidently for many centuries. They formed a satisfactory base and foundation for large structures, both by individuals and corporations. In constructing and paving Clifton Avenue no doubt it was the object and purpose of the city to provide for the escape of surface water so as to obviate the danger of such water saturating the subsurface. The engineers were familiar with the soil in question. Moreover, it may be supposed that the street was maintained by the city with the thought that surface water should be made to flow over the surface into the river so as to avoid percolating into the subsoil.

Because of the long use of that area for building and residential purposes, the plaintiffs had a right confidently to rely upon the safety and security of their property and that such a catastrophe as resulted in the destruction of the street would not occur. It was not their fault that the subsurface became impregnated with water. Plaintiffs had a right to believe that the city, being familiar with the nature of loess soil, would guard against the seepage of water into subsurface soil so as to bring about the catastrophe which occurred. So far as the plaintiffs are concerned, it was a grave casualty. As to them, all of the elements and characteristics as above defined were present.

2. Defendant makes the further contention that plaintiffs are not entitled to recover for the reason that the residence itself was not physically damaged by the casualty. Admittedly, the use of the residence was damaged in the sum of $7,710.

The question arises as to how it was damaged in so large an amount if the physical property was not affected. Such a damage arises because the residence was no longer useful; ingress and egress were denied by the closing of Clifton Avenue. It is fundamental that land has no value aside from the use that might be made of it. Plaintiffs' residence was rendered useless and, without access from a street, such as Clifton Avenue was before the catastrophe, its value was destroyed.

In the case of United States v. Causby, 328 U.S. 256, loc. cit. 261, 66 S.Ct. 1062, loc. cit. 1066, 90 L.Ed. 1206, the Supreme Court said:

"Market value fairly determined is the normal measure of the recovery. Id. *And that value may reflect the use to which the land could readily be converted, as well as the existing use.*" (Emphasis mine.)

In the case cited the physical property was undamaged by the low flights of airplanes over it. However, the land was rendered useless for the purposes

for which it was intended, and the Supreme Court upheld damages to the owner. The identical situation is here. Also, in Citizens Bank of Weston v. Commissioner of Internal Revenue, 4 Cir., 252 F.2d 425, loc. cit. 428, the court said:

"It may also be recognized as deductible when an event has definitely set at rest the possibility of future use."

It would follow that plaintiffs are entitled to recover the amount of their claim, with interest. Counsel for plaintiffs will prepare and submit a proper judgment entry.