**SUPERIOR BUSINESS ASSISTANCE CORPORATION, Defendant-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 71-1671.**

United States Court of Appeals, Tenth Circuit.

June 19, 1972.

Robert G. Grove, Oklahoma City, Okl., for defendant-appellant.

Richard Farber, Atty., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Dept. of Justice; Meyer Rothwacks, Crombie J. D. Garrett, and Virginia M. Hopkinson, Attys., Dept. of Justice; William R. Burkett, U. S. Atty., of counsel, on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and KILKENNY* and DOYLE, Circuit Judges.

KILKENNY, Circuit Judge:

This is an appeal from a summary judgment granted in a suit to quiet title to certain real property and in an ancillary proceeding to determine whether the United States or appellant, Superior Business Assistance Corporation [Superior], has the first right to the sum of $3,000.13, now being held by the plaintiff[1] in the suit to quiet title. The proceeding originated in the Oklahoma state court and was removed to the dis-

---

* Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. Central Management, Inc.

trict court for the Western District of Oklahoma, pursuant to 28 U.S.C. § 1444. The district court held that the United States was entitled to the fund. We reverse.

## FACTS

Appellant obtained a judgment against Victor Wickersham in the district court of Oklahoma County, Oklahoma on July 26, 1967. The judgment was properly filed and docketed in the district court of Cleveland County, Oklahoma, on October 4, 1967. The United States filed its notice of tax lien with the County Clerk of Cleveland County on March 28, 1968.

Previously, on February 24, 1966, Wickersham and others entered into what was designated a "Joint Venture Agreement" with reference to the purchase and sale of a parcel of real property in Cleveland County. Under the terms of this agreement, Wickersham was to receive 10% of the profit upon the sale of the land. Plaintiff acquired title to the real property owned by the joint venture on February 2, 1970, and commenced this suit to resolve the dispute between appellant and appellee. The total net profit of the venture was $30,001.34. Consequently, Wickersham's share would be $3,000.13.

## ISSUE

Although a place was provided on the last page of the Joint Venture Agreement for Wickersham's signature, the copy of the instrument before us was not signed by him. However, it is clear from the terms of the agreement and the parties agree, that he had some type of an interest, the issue being whether the interest was in the real property or a mere chose in action to collect his percentage of the fund. The appellant contends that the interest was in real property and subject to its judgment lien, while the United States argues that appellant's interest was nothing more than a chose in action.

## CONCLUSIONS

■ While federal law determines the priority of competing liens on property to which a tax lien[2] has attached, state law determines the extent of the taxpayer's property rights to which the lien can attach. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

■ Under Title 12, Oklahoma Statutes Annotated, § 706, a judgment becomes a lien upon real property of the judgment debtor in the county where the judgment was rendered and in any other county where the judgment was filed and docketed of record. There is no judgment lien on personal property, such as a chose in action, until such time as the judgment creditor succeeds in levying execution upon specific property. See Burchfield v. Bevans, 242 F.2d 239 (10th Cir. 1957).

The Wickersham interest, here under scrutiny, is clearly outlined in Paragraph VII of the Joint Venture Agreement.[3]

---

**2.** 26 U.S.C. § 6321, 26 U.S.C. § 6323(a), (f) 1.

**3.** *   *   *   *   *   *   *
"VII

It is further agreed by and between the joint venturers that for and in consideration of services previously rendered and other good and valuable consideration received, *Victor Wickersham shall be entitled to and receive a percentage of the net profits of this joint venture operation so that therefore the joint venturers shall share in the net profits of the joint venture in accordance with the following*

'percentage of net profits participation schedule':

Victor Wickersham ........10%
W. F. Parrish, Jr. ........15%
James F. Freeman .........22½%
Floyd J. Freeman ..........30%
Freeman Enterprises, Inc....22½%"
*   *   *   *   *   *

"That all gains, profits and increases from or by reason of the said joint venture shall be divided in accordance with the 'percentage of net profits participation schedule' set forth hereinabove. . . ."
*   *   *   *   *   *

That the parties intended to give Wickersham an equitable interest in the real property is demonstrated beyond question by Paragraph II of the agreement.[4]

Of particular significance is the fact that the agreement in defining Wickersham's interest used the technical words "equitable interest". In the absence of explicit language showing a contrary intent, technical words must be given their usual technical meaning. Barber v. Gonzales, 347 U.S. 637, 74 S. Ct. 822, 98 L.Ed. 1009 (1954). The laws of Oklahoma subsisting at the time and place of making of the agreement, entered into and formed a part of it as if they were expressly referred to or incorporated in its terms. Wood v. Lovett, 313 U.S. 362, 61 S.Ct. 983, 85 L.Ed. 1404 (1941); Meyer v. City of Eufaula, 154 F.2d 943 (10th Cir. 1946). Words used in a writing, which had at the time a well known meaning in the law, are to be employed in that sense unless the context clearly requires a contrary result. Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505 (1899). In other words, it is our duty to construe the contract so as to effectuate the manifest intention of the parties and to give life and vitality to the language the parties have used to express their agreement. Tenneco Oil Co. v. Gaffney, 369 F.2d 306 (10th Cir. 1966); United States v. Continental Oil Co., 237 F. Supp. 294 (W.D.Okla.1964), aff'd. 364 F.2d 516 (10th Cir. 1966).

An equitable interest in real property has long been recognized by the Oklahoma courts. Guaranty State Bank v. Pratt, 72 Okl. 244, 180 P. 376 (1919);

Taylor v. Brindley, 164 F.2d 235 (10th Cir. 1947), and Youngs v. Case, 341 P.2d 572 (Okl.1959).

Youngs v. Case, *supra,* is of particular significance. The case was decided many years prior to the execution of the joint venture contract now before us. There, an attorney rendered legal services to another in connection with the purchase of eighty acres of land located in the state of Oklahoma. The attorney agreed to render his client additional legal services as might be required until the land was disposed of by the seller and, as compensation for his services rendered and to be rendered, the parties agreed that the attorney should receive one-half of the net income from the land until disposed of and one-half of the profit made thereon when sold. The court held that this transaction constituted a joint venture and that an equitable interest was created in the attorney, permitting him to prosecute an action to quiet title under Title 12, Oklahoma Statutes Annotated, § 131. Additionally, the court there held that an agreement, express or implied, to share losses is not essential to the validity of a joint venture in cases where one party furnishes the money and the other party service. 341 P.2d 576.

In the light of the language of the agreement and of the law of the state of Oklahoma as expressed in the foregoing cases, we have no alternative but to hold that Wickersham had an equitable interest in the real property of the joint venture at the time of the filing and docketing of the judgment in Cleveland County and that appellant had

---

"This agreement shall be construed with the laws of the State of Oklahoma and Uniform Partnership Act contained in the laws of the State of Oklahoma." (Emphasis supplied.)

\* \* \* \* \* \*

4.   \* \* \* \* \* \*

"II

That for the convenience and expendiency of the business of this joint venture, Floyd J. Freeman holds title to the property owned by this joint ven-

ture in his name solely, but that *each joint venturer hereto does have an equitable interest in said property in accordance with the 'percentage of net profits participation schedule' hereinafter set forth,* and that Floyd J. Freeman holds title to the subject property as trustee and for the benefit of the joint venturers hereto in accordance with said 'percentage of net profits participation schedule' . . .." (Emphasis supplied.)

\* \* \* \* \* \*

a valid judgment lien against such interest long prior to the filing of the appellee's tax lien on March 28, 1968. Accordingly, we reverse the judgment of the lower court and direct that the fund here in dispute be paid to the appellant, rather than to the appellee.

Reversed.